**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KING-DEVICK TEST INC., | |
| Plaintiff, | |
| v. | Case No. 1:17-cv-09307 (JPO) |
| NYU LANGONE HOSPITALS, STEVEN L. GALETTA, and LAURA J. BALCER, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION**
**TO PLAINTIFF'S PARTIAL MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.     LEGAL STANDARD ...........................................................................................2

        A.      The Standards Governing Plaintiff's Motion..........................................2

        B.      A 12(b)(6) Motion Is Not the Proper Vehicle to Argue the
                Merits of the Case ..................................................................................3

III.    ARGUMENT ........................................................................................................5

        A.      Defendants' Allegations That the KD Test Lacks Copyrightable
                Authorship Are Plausible ........................................................................6

        B.      Defendants' Allegations of Fraud Are Plausible .................................12

        C.      Defendants' Allegations of Forfeiture Are Plausible...........................16

IV.     CONCLUSION...................................................................................................19

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson News, LLC, v. Am. Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012)..................................................................................2, 4

*Arista Records LLC v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010)...........................................................................................2

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................................2

*In re Bear Stearns Cos., Inc. Sec., Derivative, & Erisa Litig.*,
   763 F. Supp. 2d 423 (S.D.N.Y. 2011)............................................................................2

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................................2, 3

*Bernheim v. Litt*,
   79 F.3d 318 (2d Cir. 1996).............................................................................................3

*Burke v. Nat'l Broad. Co., Inc.*,
   598 F.2d 688 (1st Cir. 1979)........................................................................................17

*Dual Groupe, LLC v. Gans-Mex LLC*,
   932 F. Supp. 2d 569 (S.D.N.Y. 2013)............................................................................4

*Exceller Software Corp. v. Pearson Educ., Inc.*,
   No. 10 Civ 0381(PGG), 2010 WL 4486944 (S.D.N.Y. Nov. 9, 2010)...........................4

*Glob. Network Commc'ns, Inc. v. City of New York*,
   458 F.3d 150 (2d Cir. 2006)........................................................................................3, 4

*Int'l Diamond Imps., Inc. v. Oriental Gemco, Inc.*,
   64 F. Supp. 3d 494 (S.D.N.Y. 2014)..............................................................................6

*Joseph Paul Corp. v. Trademark Custom Homes, Inc.*,
   No. 3:16-CV-1651-L, 2016 WL 4944370 (N.D. Tex. Sept. 16, 2016)............................4

*Joseph v. Mobileye, N.V.*,
   225 F. Supp. 3d 210 (S.D.N.Y. 2016)..........................................................................14

*Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters. Inc.*,
   945 F.2d 509 (2d Cir. 1991)...........................................................................................9

**TABLE OF AUTHORITIES (cont'd.)**

**Page(s)**

*Kregos v. Associated Press*,
    937 F.2d 700 (2d Cir. 1991)........................................................................................9

*L. Batlin & Son, Inc. v. Snyder*,
    536 F.2d 486 (2d Cir. 1976)......................................................................................11

*LovePop, Inc. v. PaperPopCards, Inc.*,
    286 F. Supp. 3d 283 (D. Mass. 2018) ......................................................................12

*Mackenzie Architects, PC v. VLG Real Estates Developers, LLC*,
    No. 1:15-CV-1105, 2016 WL 4703736 (N.D.N.Y. Sept. 8, 2016).........................13

*Nicholls v. Tufenkian Imp./Exp. Ventures*,
    No. 04 Civ.2110 WHP, 2004 WL 1399187 (S.D.N.Y. June 23, 2004)....................4

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
    602 F.3d 57 (2d Cir. 2010)..........................................................................................3

*Reti. Sys. of Gov't of the V.I. v. Blanford*,
    794 F.3d 297 (2d Cir. 2015)......................................................................................14

*Sanga Music, Inc. v. EMI Blackwood Music, Inc.*,
    55 F.3d 756 (2d Cir. 1995)...................................................................................16, 17

*Schatt v. Curtis Mgmt. Grp., Inc.*,
    764 F. Supp. 902 (S.D.N.Y. 1991) .............................................................................3

*Sharette v. Credit Suisse Int'l*,
    127 F. Supp. 3d 60 (S.D.N.Y. 2015)......................................................................1, 4

*T.S. Haulers, Inc. v. Town of Riverhead*,
    190 F. Supp. 2d 455 (E.D.N.Y. 2002) .......................................................................3

*Victor Lalli Enters, Inc. v. Big Red Apple, Inc.*,
    936 F.2d 671 (2d Cir. 1991)........................................................................................9

*We Shall Overcome Found. v. Richmond Org., Inc. (TRO Inc.)*,
    221 F. Supp. 3d 396 (S.D.N.Y. 2016).......................................................... *passim*

**Statutes**

17 U.S.C. § 101 .............................................................................................................9

17 U.S.C. § 411(b)(2) ...................................................................................................15

<u>**TABLE OF AUTHORITIES (cont'd.)**</u>

<u>**Page(s)**</u>

**Other Authorities**

COMPENDIUM OF THE U.S. COPYRIGHT OFFICE PRACTICES § 312.2
    (3D ED. 2017)..................................................................................................................9

COMPENDIUM OF THE U.S. COPYRIGHT OFFICE PRACTICES § 313.3(E)
    (3D ED. 2017)..................................................................................................................8

COMPENDIUM OF THE U.S. COPYRIGHT OFFICE PRACTICES § 707.3
    (3D ED. 2017)................................................................................................................10

Fed. R. Civ. P. 3(E)(ii) ...........................................................................................................5

Fed. R. Civ. P. 15(a)(1)(B) .....................................................................................................5

Fed. R. Civ. P. 8(a) ...............................................................................................................14

Fed. R. Civ. P. 9(b) ..........................................................................................................2, 14

Fed. R. Civ. P. 12(b)(6).....................................................................................................1, 2, 3

## I.      INTRODUCTION

At the heart of this dispute is a simple eye vision exam called the "King Devick test" (the "KD Test").  Among its many allegations, Plaintiff claims that Defendants have infringed a copyright that allegedly protects the KD Test.  That copyright is not valid.  And while it may be unfortunate as a business matter for Plaintiff to have this Court declare that the KD Test is not protected by a valid copyright, that business harm is the risk Plaintiff took in filing this case, and it is the same risk that all alleged intellectual property holders face when attempting to enforce their alleged rights against others in a court of law.  That risk is good policy because it helps to deter clogging the courts with allegations based on dubious rights.  Unfortunately, this is such a case, as the merits will show.

But this is not the time to decide the merits, as the merits have not been put to the Court. The sole question presented by the instant motion is whether Defendants' counterclaim of copyright invalidity is sufficiently pled.  It is.

It is axiomatic that a complaint cannot be dismissed under Rule 12(b)(6) merely because one party disputes the factual allegations of the other.  *See, e.g., Sharette v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 84 (S.D.N.Y. 2015) (denying motion to dismiss that "merely raised a factual dispute inappropriate for resolution at the pleading stage").  Yet Plaintiff ignores this voluminous precedent and instead raises factual and legal disputes, introduces new and unverified "facts," and seeks an order that would require the Court to determine—now—that Plaintiff will ultimately prevail on the highly fact-based questions of originality, divesting publication, and fraud.  The resolution of these issues is premature, and Defendants are entitled to discovery on their well-pleaded allegations.  For these reasons, explained more fully below, Plaintiff's motion to dismiss should be denied and the counterclaim for copyright invalidity should proceed to discovery and to a determination on the merits.

## II.    LEGAL STANDARD

### A.    The Standards Governing Plaintiff's Motion

A complaint should not be dismissed if, as is the case here, it "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  The liberal pleading standard of Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).[1]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Plausibility is the key to determining when a claim is sufficiently pled.

Neither *Twombly* nor *Iqbal* "require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010).  While the plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility," it is not a "probability requirement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 55 U.S. at 556).

Further, in conducting a plausibility analysis under Rule 12(b)(6), the court must "accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Anderson News, LLC, v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (citations omitted); *see also, e.g., In re Bear*

---

[1] Although Plaintiff does not challenge Defendants' allegations sounding in fraud under the heightened pleading standard of Rule 9(b), Defendants show that they have stated the circumstances constituting fraud with particularity.  *See infra* at 12–14.

2

*Stearns Cos., Inc. Sec., Derivative, & Erisa Litig.*, 763 F. Supp. 2d 423, 484 (S.D.N.Y. 2011) ("[T]he Court construes the complaint liberally and accepts as true the non-conclusory factual allegations in the complaint, and draws all reasonable inferences in the plaintiff's favor").

Indeed, even when a well-pleaded claim appears far-fetched, which is far from the case here, it withstands a 12(b)(6) motion. *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996) ("Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal."); *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."); *Schatt v. Curtis Mgmt. Grp., Inc.*, 764 F. Supp. 902, 915 (S.D.N.Y. 1991) ("The likelihood that defendants will prevail in their counterclaim is immaterial . . . .").

### B.    A 12(b)(6) Motion Is Not the Proper Vehicle to Argue the Merits of the Case

Per the standards above, it is self-evident that "[t]he purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis in original); *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 65 (2d Cir. 2010) ("[A] motion to dismiss does not involve consideration of whether 'a plaintiff will ultimately prevail' on the merits, but instead solely 'whether the claimant is entitled to offer evidence' in support of his claims'") (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)); *We Shall Overcome Found. v. Richmond Org., Inc. (TRO Inc.)*, 221 F. Supp. 3d 396, 409 (S.D.N.Y. 2016) ("This motion to dismiss does not present the occasion to weigh the merits of the parties' contentions but only to determine the sufficiency of the pleading of a claim."); *T.S. Haulers, Inc. v. Town of Riverhead*, 190 F. Supp. 2d 455, 460 (E.D.N.Y. 2002) ("The issue to consider is not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.").[2]

Simply stated, "'fact-specific question[s] cannot be resolved on the pleadings.'" *Anderson News*, 680 F.3d at 185 (quoting *Todd v. Exxon Corp.*, 275 F.3d 191, 203 (2d Cir. 2001)); *see also Sharette*, 127 F. Supp. 3d at 76 (stating that the court's task in ruling on a motion to dismiss is "not to assay the weight of the evidence which might be offered in support thereof") (citation omitted); *Dual Groupe, LLC v. Gans-Mex LLC*, 932 F. Supp. 2d 569, 572 (S.D.N.Y. 2013) ("Defendants dispute many of the complaint's factual allegations, which the court cannot adjudicate at the motion to dismiss stage.").

Accordingly, courts routinely deny motions to dismiss that—like Plaintiff's motion—attempt to dispute the claimant's allegations or raise factual issues, which are inappropriate for resolution on a 12(b)(6) motion. *See, e.g., Exceller Software Corp. v. Pearson Educ., Inc.*, No. 10 Civ 0381(PGG), 2010 WL 4486944 at *3–4, *6–7 (S.D.N.Y. Nov. 9, 2010) (denying motion to dismiss claims for, among other things, copyright infringement because defendants "raise[d] a host of factual issues that cannot be resolved on a motion to dismiss"); *Nicholls v. Tufenkian Imp./Exp. Ventures*, No. 04 Civ.2110 WHP, 2004 WL 1399187, at *2–3 (S.D.N.Y. June 23, 2004) (denying motion to dismiss copyright infringement claim because defendants' arguments "raise[d] factual issues" and went "to the merits of [the] action and not the sufficiency of the pleading"); *Joseph Paul Corp. v. Trademark Custom Homes, Inc.*, No. 3:16-CV-1651-L, 2016 WL 4944370, at *12 (N.D. Tex. Sept. 16, 2016) (denying a motion to dismiss claims for copyright infringement and trademark infringement because "the matters raised by [defendants] [we]re better suited for a

---

[2] "The streamlined testing of the substantive merits, on the other hand, is more appropriately reserved for the summary judgment procedure, governed by Rule 56, where both parties may conduct appropriate discovery and submit the additional supporting material contemplated by that rule." *Glob. Network Commc'ns*, 458 F.3d at 155 (internal quotations and citations omitted). As discussed below, Plaintiff's arguments are more appropriate for a motion for summary judgment.

motion for summary judgment or trial in which competent evidence outside the pleadings can be considered by the court").

## III.   ARGUMENT

Under these principles, Plaintiff's motion is fatally flawed.

*First*, it fails to identify a single alleged deficiency in Defendants' pleading, effectively conceding its sufficiency.  This is not surprising, considering that Defendants allege numerous, detailed factual allegations that amply support Defendants' counterclaim of copyright invalidity.[3]

*Second*, in spite of the voluminous precedent noted above, Plaintiff leaps to the substantive merits and argues factual and legal issues, calling attention to many that are in dispute, and for which discovery is obviously necessary.  Notably, Plaintiff's ability to respond substantively to the factual underpinnings of Defendants' counterclaim evidences that Plaintiff has "fair notice" of what this claim is.  To illustrate, Plaintiff disputes Defendants' factual allegations by arguing that:

–   the KD Test does not copy protectable expression from the Pierce Test or the Gilbert Test;

–   the KD Test is copyrightable because it contains original selections, spacing, and arrangements of unprotectable elements;

–   the failure to disclose the previously published third-party tests that were copied was not material to the Copyright Office's decision to issue a registration; and

–   the circumstances surrounding the publications of King and Devick's senior paper, in which the KD Test was displayed, did not amount to a divesting publication under the 1909 Copyright Act.

Setting aside the questionable nature of these assertions, all of Plaintiff's arguments are improper because they require the weighing of evidence that has not yet been discovered and ignores entirely Defendants' well-pleaded factual allegations, which the Court must accept as true.

---

[3] Because Plaintiff has failed to explain how Defendants' counterclaim is facially deficient, Defendants file this opposition rather than amend their pleading pursuant to Fed. R. Civ. P. 15(a)(1)(B) and Rule 3(E)(ii) of Judge Oetken's Individual Practices.

This Court has denied a motion to dismiss a declaratory judgment claim for invalid copyright based on similarly flawed arguments. In *We Shall Overcome*, the plaintiff sought a declaratory judgment that the defendants did not own the copyrights at issue because (1) the two alleged copyright registrations do not cover the melody of the song asserted against plaintiffs, (2) defendants fraudulently obtained the copyrights by omitting material information from their copyright applications, and (3) the copyrights had been forfeited through publication without the requisite copyright notice. 221 F. Supp. 3d at 405, 407–08. Via a 12(b)(6) motion, the defendants contended that their song was original and entitled to copyright protection, insisted that the information omitted from their applications was immaterial to the Copyright Office's registration decisions, and argued that they had not authorized the allegedly divesting publications. *Id.* at 405, 408, 409. The Court properly declined to resolve these premature factual disputes and held that the plaintiff adequately stated a claim for relief. This motion requires the same result.

### A.      Defendants' Allegations That the KD Test Lacks Copyrightable Authorship Are Plausible

In order to prove its copyright infringement claim, Plaintiff must prove that it owns a valid copyright in the KD Test as a threshold matter. *See Int'l Diamond Imps., Inc. v. Oriental Gemco, Inc.,* 64 F. Supp. 3d 494, 510 (S.D.N.Y. 2014) ("To prevail on a claim of copyright infringement, the plaintiff must demonstrate both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant."). Defendants' counterclaim of copyright invalidity, which Plaintiff now seeks to dismiss, challenges Plaintiff's ownership of a copyright in the KD Test as well as the validity of its federal copyright registration.

As alleged in detail, Defendants contend that the KD Test is not copyrightable because it is a mere copy of prior tests, namely, the Pierce and Gilbert Tests, and fails to embody any expression created by King and Devick that warrants copyright protection. Specifically,

6

Defendants allege that:

- "King and Devick copied the Pierce Saccade Test, making only slight modifications, to create what they named the King-Devick Test.  They copied substantial portions of the Pierce Saccade Test, including its **selection** of single-digit numbers (as opposed to multiple-digit numbers), its **arrangement** and coordination of numbers and lines, and the labeling of the demonstration and test cards" (CC ¶ 19), as well as the "five rows of single-digit numbers . . . connected by straight arrow lines" in the Demonstration Card and the relative "vertical **spacing** between each row" of numbers in the demonstration cards and test cards (*id.* ¶ 20);

- "Upon information and belief, King and Devick also derived the KD Test from the Gilbert Test . . . including [copying] the vertical lines of numbers at the beginning and end of the card" (*id.* ¶ 22, Ex. 3);

- "In light of King and Devick's copying . . . , the KD Test is a mere copy, which **does not embody any additional copyrightable authorship** of King or Devick that is afforded copyright protection" (*id.* ¶ 23);

- "On information and belief, on or around August 23, 1983, . . . King and Devick, **despite their copying of prior tests**, [and] **not having created any copyrightable authorship themselves** . . .  applied to register the KD Test with the U.S. Copyright Office" (*id.* ¶ 36);

-  "After excluding the pre-existing third-party authorship . . . only a *de minimis* amount of material remains, **which is not sufficiently creative and original to be eligible for copyright protection and registration**" (*id.* ¶ 76).

For purposes of the instant motion, these allegations must be taken as true.  Ignoring this procedural reality, Plaintiff responds as if the defense has been put before the Court on summary judgment.  Plaintiff does not argue that these allegations are deficient even if true—but instead concedes copying as a factual matter and presents new "facts" and arguments that it wants the Court to accept as true *now*, without any discovery.  In particular, Plaintiff (1) admits copying the Pierce Test; (2) argues that such copying is irrelevant because it relates only to unprotectable ideas and elements from the Pierce Test; and (3) explains—for the first time—that the scope of copyright protection afforded to the KD Test covers only its *selection, sequencing, placement, and spacing*

of uncopyrightable single-digit numbers and/or lines in the KD Test.  Mtn. at 4–5, 10-11.[4]  In essence, Plaintiff claims to own a "compilation" of such elements that comprise the **layout** of the KD Test cards.

Plaintiff's motion and its new layout theory simply prove that discovery is required so that, when discovery is over, the merits of Defendants well-pleaded counterclaim can be resolved, potentially on summary judgment.  But that judgment should wait until this Court has had the opportunity to consider fully the following points in the light of a complete factual record, after discovery is complete.  Indeed, based on Plaintiff's new layout theory of copyrightability and the following authority, it may very well be that this Court ultimately finds Plaintiff's copyright invalid as a matter of law.

_First_, the layout of printed material is rarely deemed copyrightable.  The Copyright Office advises that "[t]he general **layout** or format of a book, a page, a slide presentation . . . **a form, or the like**, **is not copyrightable** because it is a template of expression."  COMPENDIUM OF THE U.S. COPYRIGHT OFFICE PRACTICES ("COMPENDIUM III") § 313.3(E) (3d ed. 2017) (emphasis added).[5]

---

[4] Plaintiff also argues that the Court must compare the KD Test and the Pierce Test to determine if they are substantially similar.  This is a red herring.  Defendants' claim that the KD Test is uncopyrightable is not dependent upon a finding of substantial similarity—a test for infringement—between the KD Test and any third-party test.  That is a claim properly made by the copyright owner of any such third party test; not Defendants.  Thus, the cases cited by Plaintiff on pages 8–9, which relate to how a court may determine substantial similarity between a plaintiff's and defendant's works on a motion to dismiss, are irrelevant.  What _is_ relevant is the _We Shall Overcome_ decision, which distinguishes instances in which a court may dismiss a copyright infringement claim based on a lack of substantial similarity, from the situation here, where the party claiming invalidity has "adequately pleaded a lack of originality and of ownership rights" in the copyright at issue.  221 F. Supp. 3d at 407.  That Pierce may have "expressly disclaimed any authorship or ownership of the K-D Test" also is irrelevant because a third party, Cook Incorporated, appears to be the owner of the copyright in the Pierce Test, not Pierce.  _See_ CC ¶ 41 and Ex. 1.

[5] Plaintiff rightfully acknowledges the Compendium as a "prominent authority on copyright law."  Mtn. at 9 n.3.

*Second*, copyright claims based on selection or arrangement are also often questioned as unsustainable.  The Copyright Act defines a compilation as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."  17 U.S.C. § 101.  To determine whether a compilation satisfies the originality requirement, the Copyright Office considers factors such as the "type of material or data" compiled, whether the selection and arrangement "were made from a large or diverse pool of material or data," and whether the arrangement was "standard" or "obvious."  COMPENDIUM III § 312.2.  Here, the *selection* of single-digit numbers does not merit protection because King and Devick selected **every** number between 0 and 9, which is certainly not a "large or diverse pool of material."  *See Victor Lalli Enters, Inc. v. Big Red Apple, Inc.*, 936 F.2d 671, 673 (2d Cir. 1991) (finding that plaintiff's charts were not entitled to copyright protection because plaintiff "arrange[d] factual data according to 'purely functional grids that offer no opportunity for variation'" and "exercise[d] neither selectivity in what he report[ed] nor creativity in how he report[ed] it"); *cf. Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters. Inc*., 945 F.2d 509, 513–14 (2d Cir. 1991) (selection of telephone numbers from **many possible choices** and arrangement into categories **created by the author** sufficiently original for protection) (cited in Mtn. at 10); *Kregos v. Associated Press*, 937 F.2d 700, 704 (2d Cir. 1991) (selection of nine baseball statistics from among **many possible statistical categories** sufficiently original for protection) (cited in Mtn. at 11).

*Third*, Plaintiff's claim in "placement" and "spacing" is even more dubious.  The Compendium unequivocally provides that "leading (i.e., ***the space between lines of type***), . . . the ***arrangement of type on the pages***, or the ***placement, spacing, and juxtaposition of textual and***

***illustrative matter in the work***" are ***not protected by copyright law*** "because they fall within the realm of ***uncopyrightable ideas***."  COMPENDIUM III § 707.3 (emphasis added).

*Fourth*, with respect to Plaintiff's alleged arrangement, Plaintiff concedes it was dictated by function: "the KD Test's "placement of digits at varying intervals on each line [is] to more accurately simulate the reading experience."  Mtn. at 4.  This concession alone renders the KD Test uncopyrightable.  *See* COMPENDIUM III § 313.4(G) (advising that "***copyright law does not protect*** . . . ***any functional layout***, coloring, or design that facilitates the use of a form") (emphasis added).

*Fifth*, Plaintiff's claim that the KD Test does not copy any of Pierce's "unique selection and arrangement" of unprotectable elements, such as the "spacing" and "decision to include a certain number of lines," but rather contains wholly original spacing and layout of numbers (Mtn. at 12–13), is plainly contradicted by the tests themselves.  Plaintiff's similar claim that the KD test embodies an "entirely dissimilar" selection and arrangement of digits from the Gilbert Test (Mtn. at 13), is also belied by the tests themselves.  *See e.g.*:

| <u>**Pierce Saccade Test**</u> | <u>**King-Devick Test**</u> |

Demonstration Card



10

**Gilbert Test, Digit Card 3**    **King-Devick Test, Test III Card**

With respect to the Pierce Test compared to the KD Test, the number of horizontal lines and diagonal lines are the same, as is their spacing, and one single digit is placed at the far left and far right sides of each horizontal line.  Furthermore, the relative vertical spacing between the horizontal lines between the Test I, Test II, and Test III cards are the same.  *See also* CC ¶ 20 and Exs. 1 and 2.  With respect to the Gilbert Test compared to the Test II and Test III cards of the KD Test, there is no appreciable difference between the placement of single-digit numbers in a vertical line at the far left and right sides of the cards, placement of single-digit numbers in an inconsistent pattern along the horizontal lines placed between both vertical lines, vertical spacing between each row of numbers,  or selection of the number of digits to include in each row (4–6 numbers per row in the Gilbert Test and 5 numbers per row in the KD Test).

To state an age-old standard: a work that is a mere copy of another work of authorship is not copyrightable.  *See L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 490 (2d Cir. 1976) ("[O]ne who has slavishly or mechanically copied from others may not claim to be an author.") (citation omitted).

Moreover, Plaintiff's contentions in its motion that the KD Test embodies original expression and does not copy any protectable elements from third-party tests is directly contradicted by Defendants' well-pleaded allegations (*see infra* at 7) —which must be accepted as true.  *See, e.g., We Shall Overcome*, 221 F. Supp. 3d at 407 (finding that plaintiffs plausibly alleged

copying material in the public domain by describing the similarities between the lyrics at issue and lyrics in the public domain).

For at least these reasons, Defendants fully expect to prove, either on summary judgment or at trial, that the KD Test is not copyrightable.  But regardless of what the Court ultimately holds in the future, Defendants have plausibly alleged that the KD Test does not contain any creative expression original to King and Devick.  *See* CC ¶¶ 23, 36, 76.  For this reason, Defendants are entitled to discovery.  *See LovePop, Inc. v. PaperPopCards, Inc*., 286 F. Supp. 3d 283, 291 (D. Mass. 2018) (denying in part a motion to dismiss copyright infringement claims because the factual dispute raised by defendant regarding whether the designs at issue contained unprotectable elements or were substantially similar "present[ed] a close call better resolved by a trier of fact" and required a more developed record).

### B.   Defendants' Allegations of Fraud Are Plausible

Plaintiff's argument as to Defendants' allegation of fraud on the Copyright Office is similarly misguided.

As explained by Plaintiff, the knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute reason for holding the registration invalid.  Mtn. at 14. Based on this same understanding of the law, Defendants allege as follows:

- "KDT Inc.'s asserted Reg. No. TXu000134747 is invalid and unenforceable because King and Devick, KDT Inc.'s predecessors-in-interest, committed fraud on the Copyright Office by ***intentionally withholding material information from the Copyright Office***" (CC ¶ 78);

- "On information and belief, on or around August 23, 1983, after the publication of 'NYSOA K-D Test,' King and Devick, ***despite their copying*** of prior tests, ***not having created any copyrightable authorship*** themselves, ***having forfeited any copyright*** that may have existed in the KD Test in 1976, and the NYSOA's claim to own the NYSOA K-D Test in July 1983, King and Devick applied to register the KD Test with the U.S. Copyright Office as ***an unpublished work***" (*id.* ¶ 36);

12

- "*In order to obtain a registration* for the KD Test, King and Devick *intentionally failed to disclose* to the Copyright Office that the KD Test had been previously published in its entirety in 1976" (*id.* ¶ 79; *see also* id. ¶ 37);

- "*[I]n order to obtain a registration* for the KD Test, King and Devick *intentionally failed to disclose* to the Copyright Office that the KD Test was substantially copied and derived from the previously registered and published Pierce Saccade Test, and upon information and belief, the previously published Gilbert Test, and also *knowingly failed to disclaim* this previously published and registered material owned by third parties" (*id.* ¶ 80; *see also id.* ¶ 37);

- "When King and Devick applied to register the KD Test in 1983, they were well aware that the Pierce Saccade Test had been previously published, as shown by their discussion of the Pierce Saccade Test in their 1976 senior paper" (*id.* ¶ 81; *see also id.* ¶ 38);

- "Upon information and belief, King and Devick also were aware that the Gilbert Test had been previously published when they applied to register the KD Test in 1983" (*id.* ¶ 82);

- "In light of these *material omissions and the consequent inability of the Copyright office to make an informed decision on King and Devick's application*, the Copyright Office issued Reg. No. TXu000134747 for the KD Test" (*id.* ¶ 39);

- "On information and belief, had King and Devick truthfully disclosed that the KD Test was published without notice in 1976, and that it was heavily derived from third-party material, and disclaimed all previously published and registered material, as the Copyright Office required, *the Copyright Office would have refused to register the KD Test*" (*id.* ¶ 40; *see also id.* ¶ 83).

Plaintiff does not question the sufficiency of these allegations.  Nor can it.  *See We Shall Overcome*, 221 F. Supp. 2d at 408 (holding that plaintiffs' allegations that defendants "deliberately omitted from their application" all reference to third-party created material in the public domain, and that there was an insufficient basis for listing the identified authors in the application, were "sufficiently specific, and provide[d] enough information from which to infer the requisite intent, to survive a motion to dismiss"); *Mackenzie Architects, PC v. VLG Real Estates Developers, LLC*, No. 1:15-CV-1105, 2016 WL 4703736, at *14 (N.D.N.Y. Sept. 8, 2016) (finding that defendants sufficiently pleaded a counterclaim for declaratory judgment for invalid copyright by alleging "specific misstatements about the nature and authorship of the work as well as the originality of the material" claimed in the application, why those statements were fraudulent, that "the Copyright

Office would not have issued the registrations if appraised of the true facts," by naming the person who allegedly made the fraudulent filings, and by identifying when and where they were made).

Plaintiff is also silent on the pleading standard that applies to Defendants' claim of fraud. So, not only is the plausibility standard under Rule 8(a) deemed satisfied, but so is the heightened pleading standard under Rule 9.[6]

Ignoring Defendants' numerous and detailed allegations, Plaintiff challenges the fraud claim on the same exact arguments as those discussed above, namely, that King and Devick created original expression and the KD Test is thus entitled to a copyright registration regardless of the omission of copying third party material. *Supra* 6–12; Mtn. at 15.[7] Thus, these arguments fail for the same reasons explained.

Plaintiff also ignores Defendants' allegations that the application was fraudulent for the additional reason that Plaintiffs' predecessors-in-interest knowingly failed to inform the Copyright

---

[6] *See Emps.' Reti. Sys. of Gov't of the V.I. v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015) (quoting *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (Rule 9(b) standard governing claims sounding in fraud is met when the complaint "'(1) specif[ies] the statements that the plaintiff contends were fraudulent, (2) identif[ies] the speaker, (3) state[s] where and when the statements were made, and (4) explain[s] why the statements were fraudulent.'"); *Joseph v. Mobileye, N.V.*, 225 F. Supp. 3d 210, 218 (S.D.N.Y. 2016) ("Despite the generally rigid requirement that fraud be pleaded with particularity, allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge.") (internal citation omitted).

[7] The cases that Plaintiff cite to support its argument that the omitted information were immaterial are distinguishable from the present case. In *Santrayll v. Burrell*, this Court found *on summary judgment* that the plaintiffs' failure to disclose to the Copyright Office their use of third-party samples immaterial since the work at issue contained enough original expression of its own apart from the samples. 993 F. Supp. 173, 175 (S.D.N.Y. 1998). Similarly, in *Lego A/S v. Best-Lock Constr. Toys, Inc*., the court found, after an evidentiary hearing, the failure to disclose the alleged functionality of certain elements of the work immaterial because *other elements* of the work were non-functional and protectable. 874 F. Supp. 2d 75, 103 (D. Conn. 2012). Here, Defendants have alleged consistently that ***none*** of Plaintiff's alleged authorship is copyrightable. *See* CC ¶¶ 23, 36, 76.

14

Office that the KD Test had been published in its entirety without the requisite copyright notice in 1976, which injected the KD Test into the public domain.

Simply stated, whether the facts omitted from the KD Test copyright application might have occasioned a rejection of the application had they been disclosed to the Copyright Office is a question for another day.  What is relevant now are the allegations that Defendants pled.  As the cases cited by Plaintiff demonstrate (Mtn. at 13–14), Defendants' allegations sufficiently set forth a plausible claim for fraud on the Copyright Office.

In fact, this Court rejected a similar premature attempt to dismiss a fraud-based claim for invalidity in *We Shall Overcome,* when the defendants "offer[ed] many facts and arguments in support of their good faith application for the two copyrights and their assertion that the registration would have issued even if the omitted references had been incorporated in the application."  221 F. Supp. 3d at 408.  In denying the motion to dismiss, the Court explained that "the weighing of the evidence in this regard must await post-discovery motion practice or a trial."  *Id.*

Dismissal of Defendants' charge of fraud is premature for two additional reasons.  First, since Defendants allege that Plaintiff's predecessors-in-interest knowingly failed to disclose material information, the Court is required to request that the Register of Copyrights advise the Court on "whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration."  17 U.S.C. § 411(b)(2).  Second, contrary to Plaintiff's assertion that the Court can decide the issue of materiality and fraud because "the works themselves are before the Court," the KD Test as published in 1976 and as deposited with the Copyright Office are ***not*** before the Court.  Tellingly, Plaintiff ***intentionally obstructed*** Defendants' counsel from obtaining a full copy of *The Proposed King-Devick Saccade Test and Its Relation to the Pierce Saccade Test and Reading Level*—***just last month***—by asking the library that keeps the four

referenced copies not to lend it out, photocopy pages, or allow anyone to photocopy it.  Plaintiff also has not yet provided Defendants with its Copyright Office submissions, including deposits, applications, and other communications with the Copyright Office, despite agreeing to produce these documents early.[8]

In sum, Defendants' claim of fraud is supported by well-pleaded factual allegations, which the Court must accept as true.  The fraud claim is plausible.

**C.      Defendants' Allegations of Forfeiture Are Plausible**

It is also premature for the Court to decide the issue of forfeiture.  Whether the circumstances surrounding the publication of the KD Test led to a "limited" or "general" publication is a highly fact-intensive question that requires consideration of evidence concerning the restrictions (or lack thereof) placed on the publication.  *See, e.g.*, *Sanga Music, Inc. v. EMI Blackwood Music, Inc.*, 55 F.3d 756, 759 (2d Cir. 1995) (considering testimony of individuals involved in alleged publication to determine any restrictions on publication or rights reserved on a summary judgment motion).

Notably, Plaintiff misstates the requirements for a limited publication.  Mtn. at 16 (stating that a limited publication occurs due to "some 'express or implied' limitation as to the purpose for which *or* persons to whom the publication is made") (citing *Kramer* v. Newman, 749 F. Supp. 542, 549) (S.D.N.Y. 1990) (emphasis added).  However, in *Kramer*, the court explained that "[a] limited publication communicates the contents of a (work) . . . to a definitely selected group *and* for a limited purpose, *and* without the right of diffusion, reproduction, distribution, or sale . . . . [T]he circulation must be restricted both as to persons *and* purpose, or it cannot be called a private or a limited publication."  749 F. Supp. at 549 (internal quotations and citations omitted) (emphasis

---

[8] *See* Civil Case Management Plan and Scheduling Order (Dkt. No. 33).

added).   Accordingly, the court declined to find a general publication on summary judgment because the factual record was "deficient" in two respects: first, it was unclear what access particular scholars had to the relevant documents, and second, it was unclear to what use those scholars put those documents.  *See id.* at 551 .  For this reason, "publication without a limited purpose, to even one person, is a general publication."  *Burke v. Nat'l Broad. Co., Inc.*, 598 F.2d 688, 691 (1st Cir. 1979).

Whether the author consented to the alleged publication is yet another fact that must be determined.  *See Sanga Music*, 55 F.3d at 759 ("In order to determine whether, as the district court found, the publication of the Song in *Sing Out!* extinguished Plenn's common-law copyright, we must first examine whether Plenn authorized Seeger's publication of the Song when she taught it to him in 1956.").  Therefore, in Plaintiff's words, the question of whether "the further distribution of a mere four copies to the school library was effected with the Plaintiff's consent" (Mtn. at 18) necessitates discovery.[9]

Here too, Plaintiff merely raises a factual dispute as to whether there were restrictions and whether the authors consented to publication.  Mtn. at 15–18.  Although Plaintiff argues that such publication was "limited and noncommercial," and that the counterclaim therefore does not "plausibly plead" a general publication as a matter of law, what Plaintiff is actually doing is asking the Court to accept its version of unverified presumptions and rule now that a general publication has not occurred.  This is not the Court's task in deciding a 12(b)(6) motion.  The Court need only assess the legal sufficiency of the counterclaim.  Here, the claim of forfeiture is sufficiently pled as follows:

---

[9] In fact, a decision rendered on a complete evidentiary record is the proper way to address Plaintiff's exaggerated and unsupported concern that a finding of general publication would "immediately place thousands of pre-1978 student papers in the public domain."  Mtn. at 18.

- "On information and belief, on or around August 23, 1983, after the publication of 'NYSOA K-D Test,' King and Devick, despite . . . having *forfeited any copyright that may have existed in the KD Test in 1976*, . . . applied to register the KD Test with the U.S. Copyright Office as an *unpublished work*" (CC ¶ 36);

- "On information and belief, in or around 1976, King and Devick conducted a study with 137 student subjects at a public school in the Chicago metropolitan area in which they *administered both the KD Test* and the Pierce Saccade Test" (*id.* ¶ 24);

- "The Illinois College of Optometry Press *published the senior paper in 1976, making at least four bound copies available at the ICO Library*. *See* Exhibit 4, which is a true and correct copy of the ICO Library's electronic records for Alan J. King & Steven Devick, *The Proposed King-Devick Saccade Test and its Relation to the Pierce Saccade Test and Reading Levels, Illinois College of Optometry Press* (1976)" (*id.* ¶ 26);

- "On information and belief, *neither the paper nor the appendix containing a copy of the KD Test contained a copyright notice as required by the Copyright Act of 1909 to preserve copyright ownership*. *See* Exhibit 5, which is a true and correct copy of the spine, title page, Abstract, and Table of Contents of a copy of Alan J. King & Steven Devick, *The Proposed King-Devick Saccade Test and its Relation to the Pierce Saccade Test and Reading Levels, Illinois College of Optometry Press* (1976) obtained from the ICO Library" (*id.* ¶ 27);

- "King and Devick's act of *permitting the Illinois College of Optometry Press to publish their senior paper without a copyright notice and make copies available at the ICO Library constitutes a divestive publication* under the Copyright Act of 1909" (*id.* ¶ 28);

- "Thus, in 1976, the contents of *The Proposed King-Devick Saccade Test and its Relation to the Pierce Saccade Test and Reading Levels*, *including the KD Test itself*, and to the extent the KD Test embodied any copyrightable authorship (which it did not), *fell into the public domain*" (*id.* ¶ 29);

- "[T]he alleged copyright is invalid because the KD Test fell into the public domain in 1976 when *they permitted the Illinois College of Optometry Press to publish the KD Test in its entirety*[10] as part of their senior paper . . . *without a copyright notice*. *King and Devick forfeited all common law and federal statutory copyright protection of the KD Test and injected the KD Test into the public domain by making a divesting publication of the KD Test without observance of the requisite statutory formalities under the Copyright Act of 1909* (*id.* ¶ 77).

---

[10] In light of this allegation, Plaintiff's assertion that Defendants are "cagey" in their allegations about the four library copies (Mtn. at 18 n. 6) is entirely unfounded.

In sum, Plaintiff's arguments are premature and their requested relief is improper.  *See We Shall Overcome*, 221 F. Supp. 3d at 409 (finding defendants' factual arguments disputing forfeiture premature and that complaint plausibly alleged publication without a copyright notice as required by the Copyright Act of 1909).  Defendants' allegations of forfeiture are plausibly pled.

## IV.    CONCLUSION

Plaintiff's motion is an improper attempt to argue the merits of the case at the pleading stage and should therefore be denied.  Even if Plaintiff had argued that Defendants' counterclaim failed to meet the applicable pleading standard to state a claim (which it does not), this motion would still fail because Defendants state a more than plausible claim seeking a declaratory judgment for invalid copyright.

Respectfully submitted,

FISH & RICHARDSON P.C.


Dated:  April 20, 2018               By: */s/ Kristen McCallion*
                                          John S. Goetz (JG8271)
                                          goetz@fr.com
                                          Kristen McCallion (KM5593)
                                          mccallion@fr.com
                                          Elizabeth Brenckman (EB8264)
                                          brenckman@fr.com
                                          Vivian Cheng (VC6321)
                                          cheng@fr.com
                                          601 Lexington Avenue, 52nd Floor
                                          New York, NY 10022
                                          Telephone: (212) 765-5070
                                          Facsimile: (212) 258-2291

                                          Attorneys for Defendants
                                          NYU LANGONE HOSPITALS,
                                          STEVEN L. GALETTA and
                                          LAURA J. BALCER

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on this 20th day of April, 2018, a true and correct copy of the foregoing document has been served on counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Vivian Cheng*
Vivian Cheng
