# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KING-DEVICK TEST INC., | |
| Plaintiff, | |
| v. | Case No. 1:17-cv-09307 (JPO) |
| NYU LANGONE HOSPITALS, NEW YORK UNIVERSITY, STEVEN L. GALETTA, and LAURA J. BALCER, | |
| Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
FOR THE ISSUANCE OF A REQUEST TO THE REGISTER
<u>OF COPYRIGHTS PURSUANT TO 17 U.S.C. § 411(b)(2)</u>**

## **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.    ARGUMENT .........................................................................................................1

       A.     Under the Accurate Legal Standard, Approaching the Register Is Required Upon Allegations and a Showing of Knowing Inaccuracies...................................................................................................1

       B.     There Is No "Genuine Dispute of Fact" Standard ...................................4

       C.     The Inaccuracies Are Unquestionably Established.................................6

       D.    The Knowledge Standard Is Easily Satisfied Too ..................................8

       E.     Seeking Answers from the Register Now Will Preserve Judicial Economy ................................................................................................10

III.   CONCLUSION....................................................................................................10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Archie MD, Inc. v. Elsevier, Inc.*,
261 F. Supp. 3d 512 (S.D.N.Y. 2017).......................................................................3, 7

*Archie MD, Inc. v. Elsevier, Inc.*,
   No. 16-CV-6614 (JSR), 2017 WL 3421167 (S.D.N.Y. Mar. 13, 2017)....................................4

*Argento v. Santiago for Love of Ramon LLC*,
   No. 16-CV-6172-FPG-MWP, 2017 WL 6452392 (W.D.N.Y. Dec. 18, 2017) ...................5, 6

*Argento v. Santiago for Love of Ramon LLC*,
   No. 16-CV-6172-FPG-MWP, 2018 WL 903516 (W.D.N.Y. Feb. 15, 2018).....................6, 10

*Bryan v. U.S.*,
   524 U.S. 184 (1998)........................................................................................................2

*Chic Home Design, LLC v. New Journey Grp. Ltd.*,
   No. 15-CV-9468 (JPO), 2017 WL 3738775 (S.D.N.Y. Aug. 30, 2017) ..................................6

*DeliverMed Holdings, LLC v. Schaltenbrand*,
   734 F.3d 616 (7th Cir. 2013) ..........................................................................................5

*Gold Value Int'l Texile, Inc. v. Sanctuary Clothing, LLC*,
   LACV16–00339JAK (FFMx), 2017 WL 2903180 (C.D. Cal. Mar. 24, 2017),
   *reconsideration denied*, LACV16–00339JAK (FFMx), 2017 WL 3477746
   (C.D. Cal. May 12, 2017) .........................................................................................3, 6, 8, 9

*Grandma Moses Props., Inc. v. This Week Magazine*,
   117 F. Supp. 348 (S.D.N.Y. 1953) ....................................................................................8

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
   559 U.S. 573 (2010).........................................................................................................9

*Kramer v. Newman*,
   749 F. Supp. 542 (S.D.N.Y. 1990) .................................................................................7, 8

*Olem Shoe Corp. v. Wash. Shoe Co.*,
   No. 09-23494-CIV, 2010 WL 3505100 (S.D. Fla. Sept. 3, 2010)...........................................4

*Palmer/Kane LLC v. Gareth Stevens Publ'g*,
   No. 1:15-CV-7404-GHW, 2017 WL 3973957 (S.D.N.Y. Sept. 7, 2017)..................................7

## TABLE OF AUTHORITIES (cont'd.)

Page(s)

*Palmer/Kane LLC v. Gareth Stevens Publ'g*,
  No. 1:15-CV-7404-GHW, 2016 WL 6238612 (S.D.N.Y. Oct. 24, 2016) ...........................2, 3

*Palmer/Kane LLC v. Rosen Book Works LLC*,
  188 F. Supp. 3d 347 (S.D.N.Y. 2016) ..................................................................................3

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
  469 U.S. 189 (1985) ..............................................................................................................2

*Roberts v. Gordy*,
  877 F. 3d 1024 (11th Cir. 2017) ...........................................................................................3

*Ross Prods. v. N.Y. Merch. Co.*,
  233 F. Supp. 260 (S.D.N.Y. 1964) .......................................................................................7

*SellPoolSuppliesOnline.com LLC v. Ugly Pools Ariz. Inc.*,
  No. CV-15-01856-PHX-BSB, 2018 WL 4565900 (D. Ariz. Sept. 24, 2018) ........................3

*Sohm v. Scholastic Inc.*
  No. 16-CV-7098 (JPO), 2018 WL 1605214 (S.D.N.Y. Mar. 29, 2018) ............................3, 7

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
  853 F.3d 980 (9th Cir. 2017) ................................................................................................3

*U. S. v. Int'l Minerals & Chem. Corp.*,
  402 U.S. 558 (1971) ..............................................................................................................9

**Statutes**

17 U.S.C. § 101 (2010) ................................................................................................................7

17 U.S.C. § 411(b) (2008) .................................................................................................. *in passim*

**Other Authorities**

Civil Minutes – General, *Jeon v. Anderson*,
  No. SACV 17-01709 JVS (KESx), (C.D. Cal. Dec. 17, 2018), Dkt. No. 47 ...........................6

Response of the Register of Copyrights to Request Pursuant to 17 U.S.C.
  § 411(b)(2), *Olem Shoe Corp. v. Wash. Shoe Co.*,
  No. 1:09-cv-23494 (S.D. Fla. Oct. 14, 2010), Dkt. No. 209.................................................5, 6

U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES
  (1st ed. 1973), Section 3.1.1(II) ...........................................................................................7

U.S. Copyright Office, Annual Report of the Register of Copyrights, Fiscal Year
  Ending September 30, 2009 (2009), *available at*
  https://www.copyright.gov/reports/annual/2009/ar2009.pdf.....................................................4

## TABLE OF AUTHORITIES (cont'd.)

**Page(s)**

English Oxford Living Dictionaries,
    https://en.oxforddictionaries.com/definition/knowledge;
    https://en.oxforddictionaries.com/definition/fraud (last visited Feb. 15, 2019) ........................2

## I.     INTRODUCTION

In this unique case, powerful evidence exists showing that Devick knowingly gave inaccurate information to the Copyright Office, namely (1) that his work was not published when it was, and (2) that his work was not based on preexisting materials when it was.  Defendants' opening brief made this clear, relying largely on circumstantial evidence.  People are convicted of crimes based on circumstantial evidence every day, where the standard is beyond a reasonable doubt.  Here, the standard is far lower—just a showing, left to the Court's discretion—and Defendants respectfully submit that they have met that standard by showing that Plaintiff's copyright registration includes inaccuracies that Devick  knew about when it was filed.

In response to all of this, Plaintiff first urges the Court to wait on this request until a judgment (from the Court or the jury) is rendered establishing that Devick committed fraud as a matter of law.  But that procedure is not required by the law, defies common sense, and would be an incredible waste of judicial resources.  Perhaps recognizing that, Plaintiff then goes on to throw up a scattershot of supposedly contrary evidence in an attempt to weaken the clear showing of knowing inaccuracies.  But this "contrary" evidence frequently misses the point.  Defendants have met their burden under § 411.  The Court should seek input from the Copyright Office now so that it, and the parties, can obtain the Register of Copyrights' guidance on the *numerous* technical and legal issues surrounding Plaintiff's '747 Registration.

## II.     ARGUMENT

### A.     Under the Accurate Legal Standard, Approaching the Register Is Required Upon Allegations and a Showing of Knowing Inaccuracies

Plaintiff misconstrues the legal standard.  For this primary issue raised by Plaintiff, we start with the text of the relevant statute itself:

> (1) A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless—
>
>> (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and
>> (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.
>
>> (2) In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b) (2008).

The statute is certainly ***not***, as Plaintiff suggests: divided into three subparts, one of which requires a showing of "fraudulent intent." (Opp. 1.) Rather, as § 411 expressly provides, it requires "knowledge." "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985).

*Knowledge*, defined as "awareness or familiarity gained by experience of a fact or situation" does not equate to *fraud*, defined as "wrongful or criminal deception intended to result in financial or personal gain."[1] "[K]nowledge" does not refer to "a culpable state of mind or to knowledge of the law." *Bryan v. U.S.*, 524 U.S. 184, 192 (1998). Rather, it refers to "***knowledge of the facts*** that constitute the offense." *Id.* at 193 (emphasis added).

Unsurprisingly then, the law in this District is clear that the "knowledge" prong of this analysis does ***not*** require a showing of fraud. Despite Plaintiff's contrary contentions, the truth is that courts in this District routinely reject the notion that "fraudulent intent" is required to contact the Copyright Office. *See Palmer/Kane LLC v. Gareth Stevens Publ'g*, No. 1:15-CV-7404-GHW,

---

[1] English Oxford Living Dictionaries, https://en.oxforddictionaries.com/definition/knowledge; https://en.oxforddictionaries.com/definition/fraud (last visited Feb. 15, 2019).

2016 WL 6238612, at *4 (S.D.N.Y. Oct. 24, 2016) (hereinafter "*Palmer/Kane II*") ("To the extent that Plaintiff argues that the statute requires a showing of 'fraudulent intent' separate and apart from a showing of knowing inaccuracy, the Court . . . declines to graft this additional requirement onto the plain statutory text."); *Palmer/Kane LLC v. Rosen Book Works LLC*, 188 F. Supp. 3d 347, 352 (S.D.N.Y. 2016) ("Nor is plaintiff correct that [§ 411(b)] requires a showing of fraudulent intent [on] the part of the applicant."). Other courts agree "there is no requirement that Plaintiff acted with a fraudulent intent to deceive the Copyright Office." *Gold Value Int'l Texile, Inc. v. Sanctuary Clothing*, *LLC*, LACV16–00339 JAK (FFMx), 2017 WL 2903180, at *10 (C.D. Cal. Mar. 24, 2017), *reconsideration denied*, LACV16–00339 JAK (FFMx), 2017 WL 3477746 (C.D. Cal. May 12, 2017) (citing *Palmer/Kane II*, 2016 WL 6238612, at *4) ("A copyright registration may be invalidated even when the inaccurate information is presented without scienter.").[2]

Plaintiff cites a variety of cases for its proposition that fraud is a required showing. (Opp. 11.) Those citations are flat out wrong. The courts in *Sohm*, *Archie*, and *Palmer* never hold that anything more than simple knowledge is required. *See Sohm v. Scholastic Inc.* No. 16-CV-7098 (JPO), 2018 WL 1605214, at *6–7 (S.D.N.Y. Mar. 29, 2018); *Archie MD, Inc. v. Elsevier, Inc.*, 261 F. Supp. 3d 512, 518–20 (S.D.N.Y. 2017) (hereinafter "*Archie MD II*"); *Palmer/Kane II*, 2016 WL 6238612, at *4. In fact, as noted above, the court in *Palmer/Kane II*, specifically declined to read a separate requirement of fraudulent intent into § 411(b).[3]

Notably, the Copyright Office also does not take the position that a § 411(b) analysis

---

[2] *Accord SellPoolSuppliesOnline.com LLC v. Ugly Pools Ariz. Inc.*, No. CV-15-01856-PHX-BSB, 2018 WL 4565900, at *12 (D. Ariz. Sept. 24, 2018) ("It is not necessary to show fraud on the copyright office for § 411(b)(1)(A) and (B) to apply . . . .").

[3] *Unicolors, Inc. v. Urban Outfitters, Inc.* and *Roberts v. Gordy*, cited by Plaintiff (Opp. 11), are both cases from another jurisdiction that do not concern the standard to request input from the Copyright Office under § 411(b) (and in fact rely on cases that pre-date the enactment of § 411(b)) and are therefore inapposite to the present motion. 853 F.3d 980, 991 (9th Cir. 2017) (citing *Urantia Found. v. Maahera*, 114 F.3d 955, 963 (9th Cir. 1997)); 877 F. 3d 1024, 1030 (11th Cir. 2017).

*requires* fraud, noting only that it *may* involve situations of fraud:

> The Prioritizing Resources and Organization for Intellectual Property Act (Pub. L. No. 110-403) amended section 411 of the copyright law by adding subsection (b) to create a new procedure for infringement actions that requires courts to seek the advice of the Copyright Office on issues that ***may*** involve fraud on the Copyright Office.[4]

In sum, fraud or no fraud, knowingly inaccurate information is enough.

### B.   There Is No "Genuine Dispute of Fact" Standard

Not only is fraud not a required showing, but there is no authority for Plaintiff's rather bizarre notion that the Copyright Office can only be called upon when there is no genuine dispute of fact that a copyright registration was procured with the "requisite scienter" (i.e., fraudulent intent).  The parties do not need to go through summary judgment for the Court to request input from the Register.  If that were true, one would think that the statute would say that expressly, instead of saying that "the court ***shall*** request" the Register's guidance "[i]n any case in which inaccurate information described under paragraph (1) ***is alleged***."  17 U.S.C. § 411(b)(2) (emphasis added).  And cases like *Olem Shoe Corp. v. Washington Shoe Co.* and *Archie MD, Inc. v. Elsevier, Inc.*, in which the court made a ***pre***-summary judgment request to the Copyright Office under § 411(b) would not exist.[5]  But those cases do exist, which means that Plaintiff's "summary judgment standard" (Opp. 10)—a concocted theory that strives to heighten unfairly Defendants' burden on this motion—can be swept aside rather easily.

In fact, the Register's own guidance on the § 411(b)(2) procedure highlights why referral

---

[4] U.S. Copyright Office, Annual Report of the Register of Copyrights, Fiscal Year Ending September 30, 2009 (2009), *available at* https://www.copyright.gov/reports/annual/2009/ar2009.pdf.

[5] *See Olem Shoe Corp. v. Wash. Shoe Co.*, No. 09-23494-CIV, 2010 WL 3505100, at *3 (S.D. Fla. Sept. 3, 2010) (quoting 17 U.S.C. § 411(b)(2)) ("[T]he Court's duty is triggered where 'information described under paragraph (1) is *alleged.*'") (emphasis in original); *Archie MD, Inc. v. Elsevier, Inc.*, No. 16-CV-6614 (JSR), 2017 WL 3421167, at *10 (S.D.N.Y. Mar. 13, 2017) ("By its terms, § 411(b)(2) applies here.  Elsevier has *alleged* 'inaccurate information described under' § 411(b)(1) . . . .").

in this case should occur *prior* to the summary judgment.  In her response to the court's inquiry in *Olem Shoe Corp.*, the Register confirmed that referral is mandatory prior to invalidating a registration, but suggested that "at a minimum, the court retains the power to delay the request ***until a factual record has been developed***, e.g., through affidavits or discovery."  Response of the Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2) at 11, *Olem Shoe Corp. v. Wash. Shoe Co.*, No. 1:09-cv-23494 (S.D. Fla. Oct. 14, 2010), Dkt. No. 209 (hereinafter "Register Resp.") (emphasis added) (attached as Exhibit A).  Thus, the Register's view is that a factual record need only be "developed" through affidavits *or* discovery, and not that a judicial determination is required.  A developed record—which is what we have here—is simply intended to avoid a request where the moving party's "bare allegations are unsupported by any facts."  *Id.  This* is what *DeliverMed Holdings, LLC v. Schaltenbrand*[6] cautioned about, and it is not what we have here.

Although a court *may* entertain a motion for partial summary judgment to determine whether there is in fact a misstatement of fact in the application, the Register explicitly cautioned that, "if that issue depends ***even in part on*** interpretation or understanding of the Copyright Office's registration practices, the more prudent practice – and the practice anticipated in § 411(b) – would be to refer the question to the Register."  Register Resp. at 12 n.5 (emphasis added).  Plaintiff's briefing makes clear (as discussed below) that the issue of interpreting and understanding the Office's registration practices is *exactly* what is forthcoming.

Indeed, courts have ***deferred*** their decisions on similar motions for summary judgment until they receive advice from the Register as to whether it would have rejected the plaintiff's registration had it known about the inaccuracies.  For example, in *Argento v. Santiago for Love of Ramon LLC*, after accepting a showing that the plaintiff included inaccurate information on his

---

[6] *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 623–25 (7th Cir. 2013).

application with knowledge that it was inaccurate—because it was "the only logical conclusion to draw from the facts"—the court held that it "must solicit the advice of the Register" to resolve the issue of materiality before ruling on summary judgment.  No. 16-CV-6172-FPG-MWP, 2017 WL 6452392, at *4 (W.D.N.Y. Dec. 18, 2017).[7]  Courts from other circuits have done the same.[8]

Further, Defendants are not aware of any case in which the court sought advice from the Register only *after* a jury trial when one of the parties requested referral earlier in the litigation.[9] And *Chic Home Design, LLC v. New Journey Group Ltd.* is easily distinguished because neither party requested referral to the Register before and the factual issue arose for the first time in the summary judgment briefing, and the Court did not have the plaintiff's applications to review.  No. 15-CV-9468 (JPO), 2017 WL 3738775, at *3-4 (S.D.N.Y. Aug. 30, 2017).

It is clear that the Register invites courts to seek its advice in situations just like we have here.  As demonstrated in Defendants' opening brief and below, there are much more than "bare allegations . . . unsupported by any facts."  Register Resp. at 11.  Instead, the alleged inaccuracies in the '747 Registration raise exactly the type of issues brought to the Register *prior* to summary judgment, particularly since the registration and inaccuracies at issue are analyzed under the Copyright Office's registration practices between 1976 and 1983.  The Register may assist the court in its interpretation and understanding of these practices, just as it encourages.  *Id*. at 12.

## C.    The Inaccuracies Are Unquestionably Established

For the same reasons, it is baseless to say that the Court can go to the Register only when

---

[7] The Register ultimately determined that it would have refused the plaintiff's registration had it known of the inaccuracy, and based on that determination the court invalidated the registration on summary judgment.  *Argento v. Santiago for Love of Ramon LLC*, No. 16-CV-6172-FPG-MWP, 2018 WL 903516, at *2 (W.D.N.Y. Feb. 15, 2018).

[8] *See, e.g.*, Civil Minutes – General at 8–9, *Jeon v. Anderson*, No. SACV 17-01709 JVS (KESx), (C.D. Cal. Dec. 17, 2018), Dkt. No. 47 (deferring summary judgment decision on copyright invalidity "until it receives a response from the Register" to questions concerning materiality of the alleged inaccuracies) (attached as Exhibit B); *Gold Value*, 2017 WL 2903180, at *10 (deferring a summary judgment determination pending receipt of the Register's response).

[9] *Palmer/Kane II*, cited by Plaintiff (Opp. 11), was voluntarily dismissed with prejudice before reaching trial.  No. 1:15-cv-07404-GHW (S.D.N.Y. Sept. 20, 2017), Dkt. No. 109.

there is no genuine issue of material fact concerning the inaccuracy of the registration.  (Opp. 12.)  There is no support for such a theory.  As noted, upon an allegation and showing of knowledge and an inaccuracy, the Court ***must*** go to the Register per § 411(b)(2).  And the plain truth is that the '747 Registration contains as least two inaccuracies, each an independent basis to approach the Register now: (1) the claim of no publication, and (2) the failure to claim "preexisting material."

_False Claim of No Publication_.  A work is "published" for purposes of the Copyright Act when copies are distributed "to the public by sale or other transfer of ownership, or by rental, lease or lending" or offered to be distributed "to a group of persons for purposes of further distribution, pubic performance, or public display."  17 U.S.C. § 101 (2010).  This same standard applied in the 1970s and 1980s.[10]  Here, plaintiff concedes the work was published before registration when it admits (as it had to) that Devick sold laminated copies of the K-D Test during a seven-year period leading up to Plaintiff's registration.  (Opp. 4-5.)  Plaintiff does not dispute—and therefore concedes—that sale or public distribution of copies constitutes a general publication which was well settled at the time Devick sold the K-D Test "commercially" from 1976–1983.[11]  Plaintiff also concedes mailing the Senior Paper with the test to Pierce without any restrictions.  (Opp. 5.)[12]

---

[10] _Archie MD II_, 261 F. Supp. 3d at 517 n.4 (recognizing the current statutory definition comports with prior case law).

[11] _See e.g._, _Ross Prods. v. N.Y. Merch. Co_., 233 F. Supp. 260, 261 (S.D.N.Y. 1964) ("It cannot be disputed that putting [an] article on sale to the general public constituted a general publication."); U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (1st ed. 1973), Section 3.1.1(II) ("Under the court decisions, a general publication may be defined as the act of making one or more  copies of a work available to the general public, without express or implied restrictions as to future use, ***usually by means of a sale*** . . . .") (emphasis added).  For these reasons, the cases cited by Plaintiff that found a genuine factual dispute concerning the applicant's knowledge of publication are distinguishable on the facts.  _See Archie MD II_, 261 F. Supp. 3d at 517 (applicant did not know whether licensing to one company constituted publication, which was an "***unsettled legal question***" at the time of application) (emphasis added); _Sohm_, 2018 WL 1605214 at *7 (applicant did not know whether the works had been licensed by ***third parties*** prior to application); _Palmer/Kane LLC v. Gareth Stevens Publ'g_, No. 1:15-CV-7404-GHW, 2017 WL 3973957, at *12–13 (S.D.N.Y. Sept. 7, 2017) (applicant relied on specific instructions from the Copyright Office and it was unclear whether those instructions accounted for a prior publication).  Devick's sales are clear acts of publication.

[12] Plaintiff's argument that the 1976 mailing to Pierce was a _limited_ publication merely because it was a "one-off distribution to another member of the trade" (Opp. 21) is unconvincing.  Pierce was a stranger to Devick, and there were no restrictions/limitations on Pierce's use.  This is entirely different from the limited publication "to members of the trade for limited purposes of review or criticism of performance" described in _Kramer v. Newman_, cited by

Plaintiff also acknowledges the NYSOA study prior to the '747 Registration (Opp. 7), during which the test was copied and administered to 1,500 children.  Plaintiff conveniently ignores Devick's publication by license to Bernell, and the July 1983 publication in the Journal of the American Optometric Association, both of which occurred prior to Devick's copyright filing. Prior publication of the Senior Paper with the K-D Test, and the test itself, definitely occurred, yet the application inaccurately said "no publication."  This warrants Copyright Office review.

*Failure to Claim Preexisting Material*.  Here too, Plaintiff concedes copying the prior published Pierce Test and confirms that the Pierce and K-D Tests "share similarities."  (Opp. 15). It also submits a highly technical legal argument about what may constitute a "derivative work" or a "transformative new work," what elements of the Pierce and K-D Tests are or are not copyrightable, the Compendium's rules in this regard, and how all of this relates to "five-act tragedies" (if at all).  (Opp. 13–16).  This is a clear call to the Register.  But the simple fact is that Plaintiff copied—which no one denies—and thus "preexisting material" existed when the '747 Registration was filed.  This is sufficient to invite the Register to opine.

### D.     The Knowledge Standard Is Easily Satisfied Too

With the inaccuracies alleged and sufficiently shown, we turn to Devick's knowledge, which has also been sufficiently alleged and shown.  As a practical matter, it is important to note that "the knowledge requirement of 17 U.S.C. § 411(b)(1)(A) does not mean knowledge of the law that applies to the underlying facts about which Plaintiff was fully informed."  *Gold Value*, 2017 WL 2903180, at *9.  In *Gold Value*, the plaintiff argued that the inaccurate publication status on

---

Plaintiff.  749 F. Supp. 542, 550 (S.D.N.Y. 1990).  Moreover, "[t]his circuit has said that the 'common-law right is lost by the general publication or unrestricted sale of a single copy.'"  *Grandma Moses Props., Inc. v. This Week Magazine*, 117 F. Supp. 348, 350–51 (S.D.N.Y. 1953) (quoting *Bobbs-Merrill Co. v. Straus*, 147 F. 15, 19 (2d Cir. 1906), *aff'd*, 210 U.S. 339 (1908)).  Devick's distribution to Pierce was publication.  While there are additional arguments about whether this act of publication (and others) brought the work into the public domain, there is no need to decide this issue now.  The work was published and that is enough.

its application was not a knowing misstatement because it did not know that, as a matter of law, the sale of samples to its customers constituted publication. *Id.* at *8. The court rejected this "ignorance of the law" argument because plaintiff's 30(b)(6) witness "knew what samples it had sold, to whom these sales were made and the terms and conditions of the transactions." *Id.* at *8–9. Because the plaintiff knew these relevant facts, but failed to present an application that was consistent with those facts, the knowledge requirement in § 411(b)(1)(A) was satisfied. *Id.* at *10. And under these facts, there was no need to show fraudulent intent to deceive the Copyright Office. *Id.* As noted above, "knowledge"—the word used in the statute—refers to "***knowledge of the facts***." *Supra* p. 2.

For nearly two centuries, our highest court has firmly held that "ignorance of the law will not excuse any person, either civilly or criminally." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 581 (2010) (quoting *Barlow v. U.S.*, 32 U.S. 404, 411 (1833)). This principle "applies whether the law be a statute or a duly promulgated and published regulation." *U. S. v. Int'l Minerals & Chem. Corp.*, 402 U.S. 558, 563 (1971).

Under these applicable and deep-rooted standards, Devick had the requisite "knowledge" required by the statute. He knew that he mailed the Senior Paper, actively sold the K-D Test, and copied the Pierce Test. And the application form clearly instructed the applicant to state a date and nation of publication "if this work has been published" and to "[i]dentify any preexisting work or works that this work is based on or incorporates."[13] This is all established and unrefuted. This knowledge of the facts, combined with the unquestionable inaccuracies on Plaintiff's registration lead to only one conclusion—this Court *must* invite the Register to opine. If anything is clear from Plaintiff's opposition, there are numerous highly technical issues concerning copyrightability,

---

[13] McCallion Decl. (Dkt. No. 74), Ex. K.

derivative work status, and thirty-year old Copyright Office procedures.  There can be no better case than this one for seeking the Register's esteemed guidance.

### E.        Seeking Answers from the Register Now Will Preserve Judicial Economy

The most efficient course forward is for the Court to issue a request to the Register pursuant to § 411(b)(2).  Defendants intend to move for summary judgment on the invalidity of Plaintiff's registration.  Plaintiff apparently intends to do the same.  Defendant also intends to move for summary judgment on lack of copyrightability, which is a distinct issue from registration invalidity, but is moot if we first confirm that Plaintiff does not own a valid registration that provides the basis for this action.  Similarly, if the Court finds that the '747 Registration is invalid—which it *needs* the Copyright Office's prior opinion to do—that decision will eliminate the need for the Court or jury to decide ***all*** of the numerous copyright infringement claims and defenses.  The most prudent path forward to save time, money, and resources on piecemeal and possibly unnecessary briefing, is to (1) grant this motion and seek the Register's advice *now*,[14] and (2) set the summary judgment briefing schedule on copyright to begin shortly *after* the Register's response.  This will allow the Court to consider the parties' summary judgment briefing with the Register's advice in hand.

## III.    CONCLUSION

For the foregoing reasons, and those set forth in Defendants' opening brief, Defendants respectfully request that the Court issue a request to the Register to advise on registration invalidity.  Upon granting of this request, and at the Court's request, Defendants will work with Plaintiff on a joint list of questions to the Register for the Court's consideration.

---

[14] Recently, the Register issued its response in about one month, ahead of the court's requested reply date.  2018 WL 903516, at *2; *Argento,* No. 16-CV-6172-FPG-MWP (W.D.N.Y. Dec. 19, 2017), Dkt. No. 45.

Respectfully submitted,

FISH & RICHARDSON P.C.


Dated:  February 15, 2019

By:  /s/ Kristen McCallion
    Kristen McCallion (KM5593)
    mccallion@fr.com
    John S. Goetz (JG8271)
    goetz@fr.com
    Vivian Cheng (VC6321)
    cheng@fr.com
    601 Lexington Avenue, 52nd Floor
    New York, NY 10022
    Telephone: (212) 765-5070
    Facsimile: (212) 258-2291

    Attorneys for Defendants
    NYU LANGONE HOSPITALS,
    NEW YORK UNIVERSITY,
    STEVEN L. GALETTA and
    LAURA J. BALCER

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on February 15, 2019, a true and correct copy of the foregoing document has been served on counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Kristen McCallion*
Kristen McCallion
