

*155 Seaport Blvd.*
*Seaport World Trade Center West*
*Boston, MA 02210*

*646.927.5500 main*
*646.927.5599 fax*

David A. Kluft
617-832-3092 direct
dkluft@foleyhoag.com

February 19, 2019

<u>Via E-mail and ECF</u>

Honorable J. Paul Oetken, U.S.D.J.
United States District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007
OetkenNYSDChambers@nysd.uscourts.gov

>   Re:   *King-Devick Test, Inc. v. Langone Hospital, et al., Case No. 17-cv-9307*
>         *Reply in Support of Letter Motion to Amend*
>         <u>*Leave to Reply Granted by January 22, 2019 Minute Entry*</u>

Dear Judge Oetken,

      We represent King-Devick Test Inc. ("Plaintiff") in the above-captioned action and submit this reply in further support of Plaintiff's Letter Motion to Amend dated January 29, 2019 (Dkt. #77) ("Letter Motion"), and in response to Defendants' Opposition to the Letter Motion, dated February 12, 2019 (Dkt. #85). In its January 22, 2019 minute entry, this Court granted Plaintiff leave to file this reply. Plaintiff makes the following five points.

      First, Defendants' characterization of the proposed amendments as entirely "new theories of copyright infringement" is hyperbole. Plaintiff's prior pleadings alleged that Plaintiff granted Defendants a license to use the King-Devick Test ("KDT") for research, and that Defendants violated the terms of the license by making unauthorized use of the KDT outside the scope of that license. (Dkt. #41 at ¶¶ 28-29, 49-51, 60.) In discovery, Plaintiff learned more about the scope of that unauthorized use, and now seeks to amend its pleadings accordingly. These proposed amended allegations concern the same license, same copyrighted work, same parties and same time-period as the prior allegations.[1]

---

[1] Additionally, Defendants' professed need to reopen discovery on damages is misplaced. Since the beginning of this case, Plaintiff has asserted that Defendants made unauthorized uses of the KDT outside the license, for which they should have paid. Plaintiff therefore articulated lost sales as a theory of damages since no later than May 2018, in response to Defendants' interrogatories. (Declaration of Kristen McCallion, Dkt. #86, at Ex S, Interrogatory 3). Defendants thus had a full opportunity to conduct fact discovery on this theory (expert discovery has not yet commenced). The additional unauthorized uses that have been uncovered in discovery may change the volume of such lost sales, but they are not a new theory of damages.

Honorable J. Paul Oetken, U.S.D.J.
January 10, 2019
Page 2

      Second, the proposed amendments are not the product of undue delay, but of the normal litigation process. In their Counterclaims, Defendants alleged that they "have used, continue to use and will use" the KDT in connection with "assessing neurological disorders." (Dkt. #30 at p. 56, ¶71.) Plaintiff propounded a document request asking specifically for documents pertaining to this allegation. (Declaration of Kristen McCallion, Dkt. #86 ("McCallion Decl.") at Ex. P at p. 6, Request 3.) As described in the Letter Motion, Defendants produced documents demonstrating that their use of the KDT went beyond the license authorized by Dr. Devick, including by instructing physicians to use it with every paying patient, and by incorporating it into the business model of the NYU Langone Concussion Center (the "Center"), which is the name under which Defendants coordinate and market various concussion-related medical services.[2] Plaintiffs deposed Dr. Laura Balcer, the co-director of the Center, about this use. For those questions Dr. Balcer was unable to answer, Plaintiffs deposed two other employees of the Center, who Defendants did not make available for depositions until December 18, 2018.[3] (*See* Letter Motion). There was no undue delay.

      Third, Defendants assert that Plaintiff's staff must have known about the full scope of Defendants' use of KDT because Plaintiff "encouraged" the Center and "always tried to be there for them." To be clear, Plaintiff has never disputed that it knew the Defendants were using the KDT at the Center. The issue in this case is not the fact of such use, but its scope. Even by the Defendants' own admission, their evidence on this point expressly describes that scope with terms like "research" and "studies" of the KDT, or as related to specific "projects." Plaintiff contends that Defendants' actual use went beyond this scope. Defendants are entitled to argue, as they do now, that Plaintiff licensed the KDT to them in return for "free" research, and that Plaintiff knew the license included these additional uses.[4] But this argument does not implicate "undue delay" or "futility;" it is instead a repeat of the equitable defenses (estoppel, acquiescence, etc.) that Defendants have asserted since the beginning of the case. (Dkt. #30.)[5] Indeed, Defendants admit that they have already taken

---

[2] The Concussion Center has a small staff (including deponents Mara Sproul and Dina Pagnotta) that coordinates the concussion-related services of doctors throughout the NYU system, including Dr. Balcer and Dr. Galetta. *See* https://nyulangone.org/locations/concussion-center; https://nyulangone.org/locations/concussion-center/doctors.

[3] The reporter delivered transcripts from those depositions to the parties on December 21, 2018. Defendants then had thirty days, until January 20, 2018, to make corrections to the transcripts. Plaintiffs brought the present motion less than seven business days after that period expired.

[4] As explained in the Letter Motion, Defendants initially denied the existence of any relationship or agreement. Now, Defendants' opposition to the Letter Motion asserts the existence of a full-fledged *quid pro quo* involving "free research" in return for the KDT license. The terms of the license – but not its existence – are in dispute.

[5] Defendants present the declarations of the two individual defendants, who in cookie-cutter avowals implausibly purport to characterize Plaintiff's knowledge of the scope of their use of the KDT. (Dkt. ##87-88.)

B4951590.1

Honorable J. Paul Oetken, U.S.D.J.
January 10, 2019
Page 3

discovery on this precise issue, including by asking about Plaintiff's knowledge of Defendants' use. (Opposition, Dkt. #85 at p. 2 n. 5; Letter Motion, Dkt. #77 at pp. 3-4.)

   Fourth, Defendants make the out-of-the-blue assertion that the Center is not "part of this case." (Opposition, Dkt. #85 at p. 2 n. 7.) On the contrary, the "NYU Langone Health Concussion Center" is a division of NYU Langone Hospitals and NYU, Defendants in this action.[6] Defendants' pleadings describe Defendant Dr. Balcer as the "co-director of the Concussion Center," (Dkt. #30 at ¶10), and Plaintiff's initial disclosures identified three Center employees on the issue of the "use of K-D Test." (McCallion Decl." at Ex. R, pp. 3-4.) The document requests propounded by Plaintiff defined Defendants as including their "subsidiaries, affiliates or departments" (McCallion Decl. Ex. P at p. 6, Request 3), and Defendants did not object to these definitions. In fact, Defendants produced documents about the Center from these Center employees, as evidenced by the very documents now before the Court. (*E.g.*, McCallion Decl. at Exs. A, B, M; Declaration of David Kluft, Dkt. #83 ("Kluft Decl.") at Exs. D, I, H, L, M, O, S, TBB, CC, EE.) The depositions of Defendants' witnesses also focused on the Center, as evidenced by the dozens of references to the Center in the excerpts that have been presented to the Court. (*E.g.*, Kluft Decl. at Exs. P-Q.) Until now, Defendants at no time interposed any objection to discovery about the Center, or sought to compartmentalize the Center from the case

   Fifth, it is not the case that Plaintiff is asserting "five new" acts of unfair competition. As in the earlier pleadings, Plaintiff is asserting a count of unfair competition by misappropriation, including because Defendants in bad faith took advantage of the parties' dealings to misappropriate Plaintiff's ideas and proprietary information for a competing purpose. (Dkt. #27 at ¶¶108-112.) Plaintiff's claim is the same now, except that Plaintiff wishes to conform the pleadings to include specific allegations regarding Defendants' bad faith.

.

                Very truly yours,

                David A. Kluft

cc: Counsel for Defendants (via e-mail)

---

The consideration of these declarations is not appropriate until summary judgment. Should the Court consider them material to the present motion, Plaintiff requests the opportunity submit its own declaration on this topic.

[6] Evidence of the Center as a division of Defendant NYU Langone can be found throughout the documentary evidence produced by Defendants. (*See, e.g.,* Kluft Decl. (Dkt. #83) at Exs. D, K, BB, CC, EE.)